IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ADELA SANCHEZ, Individually,
And as Personal Representative for
The Estate of JULIO R. SANCHEZ,
Deceased,

        Plaintiff,

  vs.                                  No. CIV 98-0475 LFG/KBM

UNITED STATES OF AMERICA,
(DEPARTMENT OF VETERANS AFFAIRS -
VETERANS AFFAIRS HOSPITAL),

        Defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AND MOTION FOR INTEREST

THIS MATTER comes before the Court on Plaintiff's Motion to Enforce Settlement and Motion for Interest [Doc. 29], filed October 20, 1999. The Court, having reviewed the submissions of the parties and being fully advised in the premises, finds that the motion is not well taken, and it will be denied.

### Facts and Procedural History

This case was settled as the result of a court-ordered settlement conference held on June 25, 1999. On July 12, 1999, the United States Attorney sent a letter to Plaintiff's counsel, confirming settlement of the case in the amount of $400,000.00. On July 19, 1999, the parties entered into a Stipulation for Compromise Settlement and Release of Federal Tort Claims Act ("Settlement

Agreement"), in which the United States agreed to pay Plaintiff and her attorney the net sum of $247,968.00 in full settlement and satisfaction of all claims. This sum represents the amount remaining after setoff of veteran's benefits paid and payable to Plaintiff, and to her husband prior to his death. Paragraph 5 of the Settlement Agreement provided that any attorney fees owed by Plaintiff "will be paid out of the settlement amount and not in addition thereto," and in ¶6 the parties acknowledged their understanding, pursuant to 28 U.S.C. §2678, that the attorney fee shall not exceed "25 percent of the total amount of the compromise settlement of $400,000.00 (Four Hundred Thousand Dollars)." The United States Attorney warranted in ¶7 that it possessed full authority to bind the government to the terms of the settlement.

On October 12, 1999, the U.S. Attorney's Office notified Plaintiff's counsel by letter that the Department of Justice had disallowed the provision in the Settlement Agreement for attorney fees calculated on the total amount of $400,000.00. The letter states that, since 28 U.S.C. §2678 provides that an attorney shall not receive or collect fees in excess of 25 per cent of any settlement, the fee in this case would be limited to 25 per cent of $247,968.00, representing the amount to be disbursed to Plaintiff by the Treasury. The letter also responded to Plaintiff's request for interest on the settlement amount by referring to 28 U.S.C. §1303(b)(1), which provides that interest may be paid only upon filing a transcript of judgment with the Secretary of the Treasury. Plaintiff thereafter filed this Motion, stating that as of the date the motion was served, the settlement amount had not been paid. Plaintiff's counsel requests that the Court order Defendant to calculate the attorney fee based on the negotiated amount of $400,000.00, rather than the net amount of $247,968.00 remaining after setoff, and he seeks interest on the settlement amount.

2

**Discussion**

Although the Court sympathizes with Plaintiff's counsel, to whom unenforceable representations were made by the U.S. Attorney's Office, the Court cannot order the government to take an action which is forbidden by law. The Federal Tort Claims Act ("FTCA"), and its case law progeny, require that attorney fees be deducted from a plaintiff's recovery after setoffs are made for amounts payable to the government by the plaintiff. An assertion to the contrary, even one made by the U.S. Attorney's Office under full settlement authority, cannot be enforced, at least so long as the error was not the result of affirmative misconduct.

Attorney Fees Under the FTCA are Calculated on the Net Settlement Amount

In this FTCA suit, Plaintiff's attorney negotiated a settlement of $400,000.00 as compensation for the wrongful death of her husband and her own loss of consortium, based on medical malpractice occurring at the VA Medical Center. Plaintiff and her now-deceased husband have received Veterans Administration benefits, and Plaintiff is entitled to future benefits, under 38 U.S.C. §1151, based on the same injuries alleged in their FTCA suit. The parties do not dispute that the §1151 benefits are to be offset against the FTCA recovery, and their Stipulation for Compromise Settlement and Release (Exhibit 2 to Plaintiff's Motion) reflects this understanding. *See*, 38 U.S.C. §1151(b); United States v. Kubrick, 444 U.S. 111, 116 n.5, 100 S. Ct. 352, 356 n.5 (1979). The purpose of §1151 is to prevent duplicate recoveries for the same disability or death. S. Rep. No. 87-2042 (1962), *reprinted in* 1962 U.S.C.C.A.N. 3260; Morgan v. United States, 968 F.2d 200, 207 (2d Cir. 1992). In this case, the VA benefits will reduce Plaintiff's FTCA recovery from $400,000.00 to $247,968.00.

At 28 U.S.C. §2678, the FTCA provides:

> No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any . . . settlement made pursuant to section 2677 of this title . . . Any attorney who charges, demands, receives, or collects for serves rendered in connection with such claim any amount in excess of that allowed under this section, if recovery be had, shall be fined not more than $2,000 or imprisoned not more than one year, or both.

The question in this case is what Congress meant by the statutory language, "any settlement made." Plaintiff's attorney contends that the "settlement" is the total amount which he negotiated on Plaintiff's behalf as appropriate to compensate for her loss, namely $400,000.00. Defendant contends that the attorney fees should be calculated based on the amount to be tendered by the United States to Plaintiff and her counsel, namely $247,968.00. Case law is sparse on this issue, but the Court finds that the weight of authority and logic supports Defendant's position.

The method of calculating attorney fees by reference to the amount actually tendered by the government has an historical basis. Prior to enactment of the present FTCA, tort claims against the government were paid by Congressional appropriations on private relief bills, and attorney fees were calculated by reference to the amount actually appropriated for a particular settlement. Wyatt v. United States, 783 F.2d 45, 47 (6th Cir. 1986). If in enacting the FTCA, Congress had intended to change this method of calculating fees, it could have explicitly provided that the 25 percent would be applied against the total amount of the judgment or negotiated settlement, rather than against the amount actually disbursed. Congress did not do so, however.

What few cases there are on this point assume without discussion that the attorney fees are to be taken as a percentage of the judgment after setoff for debts and other benefits owed to the government by the plaintiff. *See, e.g.*, Wuth v. United States, 161 F. Supp. 661, 664 (E.D. Va.

4

1958); Bandy v. United States, 92 F. Supp. 360, 365 (D. Nev. 1950). Although Plaintiff's attorney points out that these cases pre-date amendments to the FTCA, there have been no changes in the statute directly bearing on this issue nor implying any alteration of congressional intent: "The limitation of the amount of counsel fee reflects congressional concern that the victims of federal torts be treated fairly and equitably . . . Nothing in the legislative history of the 1966 amendments suggests that there was any diminution of this congressional concern." Godwin v. Schramm, 731 F.2d 153, 159 (3d Cir. 1984).

It has also been held that the right to recover attorney fees is "derivative" of the plaintiff's right to recovery, and hence necessarily subordinate to the right of the government to offset prior debts of the plaintiff. United States v. Cohen, 389 F.2d 689, 692 (5th Cir. 1967). Stated another way, §2678 does not create a "lien" on behalf of the attorney. Rather, it reflects the fact that, "[i]n enacting the Federal Tort Claims Act in 1946, Congress showed a special solicitude for persons injured by federal officers. The limitation of the amount of counsel fee reflects congressional concern that the victims of federal torts be treated fairly and equitably." Godwin, at 159. The FTCA is remedial and must be liberally construed. "It is to be liberally construed, however, in favor of the claimant, not the claimant's attorney." Wyatt, at 47. The Court takes into account the fact that the attorney fee in this case will come out of Plaintiff's recovery. Settlement Agreement, at 4; Legare v. United States, 195 F. Supp. 557, 562 (S.D. Fla. 1961).

The Government is Not Bound by Statements Made in the Settlement Agreement

Plaintiff asserts that the agreement ought to be enforced according to its terms, because the Assistant U.S. Attorney who signed the Settlement Agreement had full settlement authority under the FTCA to settle Plaintiff's claim, and Defendant never indicated that the Settlement Agreement was

5

subject to any sort of review. However,"[a] party who enters an arrangement with the government and relies on an official's interpretation of the law assumes the risk that that interpretation is in error." Trapper Mining Inc. v. Lujan, 923 F.2d 774, 781 (10th Cir. 1991) (internal punctuation omitted).

Plaintiff cites Schwartzman, Inc. v. ACF Industries, Inc., 167 F.R.D. 694 (D.N.M. 1996), for the proposition that Defendant United States government was required to have someone present with authority to settle this matter. Defendant correctly points out that the issue is not the scope of authority of the Assistant U.S. Attorney who participated in the settlement negotiations, but whether any official, of whatever rank, can bind the government to do something which the law forbids. Under the circumstances of this case, the Court holds that the Settlement Agreement cannot bind Defendant to award attorney's fees based on the gross settlement amount.

Plaintiff argues that Defendant should be estopped from pressing its claim that attorney fees can only be calculated from the net amount paid to Plaintiff. Courts invoke the doctrine of estoppel against the government with great reluctance. United States v. Browning, 630 F.2d 694, 702 (10th Cir. 1980). Application of the doctrine is justified only where it does not interfere with underlying government policies or unduly undermine the enforcement of a particular law. Emery Mining Corp. v. Secretary of Labor, 744 F.2d 1411, 1416 (10th Cir. 1984).

> When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant . . . [We decline] to expand this principle into a flat rule that estoppel may not in any circumstances run against the Government . . . But however heavy the burden might be when estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present.

6

Heckler v. Community Health Svcs. of Crawford County, Inc., 467 U.S. 51, 60, 104 S. Ct. 2218, 2223 (1984).

The Tenth Circuit interpreted this requirement to mean that the party seeking the benefit of estoppel against the government must establish not only the usual estoppel elements of detrimental reliance and so forth, but must also show affirmative misconduct on the part of the government. "Affirmative misconduct means an affirmative act of misrepresentation or concealment of a material fact. Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct." In re DePaolo, 45 F.3d 373, 376-77 (10th Cir. 1995).

Plaintiff cannot make this requisite showing. Indeed, Plaintiff does not allege that the U.S. Attorney's Office is guilty of affirmative misconduct, and there is nothing to indicate an intention to mislead in this case. Rather, the parties proceeded in a good faith, but mistaken, belief that the attorney fee could be calculated based on the total settlement. The parties' signed agreement states in relevant part:

> 6) It is also understood by and among the parties that pursuant to Title 28, United States Code, Section 2678, attorney's fees for services rendered in connection with this action shall not exceed 25 percent of the total amount of the compromise settlement of $400,000.00 (Four Hundred Thousand Dollars).
>
> 7) The persons signing this Settlement Agreement warrant and represent that they possess full authority to bind the persons on whose behalf they are signing to the terms of the agreement.

This is not a case where the government concealed information to which it alone had access, nor did trickery, deceit or artifice play any role in this process. It was simply a mistake, resulting from an absence of clear case law. In addition, attorneys for Defendant have apologized to the Court and state that they regret the misunderstanding. "[E]quitable estoppel against the government is an

7

extraordinary remedy," Bd. of County Comm'rs v. Isaac, 18 F.3d 1492, 1498 (10th Cir. 1994), and the circumstances of this case do not compel an exception to the general rule.

### Interest

Plaintiff notes that he and his client have been waiting since July for payment of the settlement amount, and he requests that the Court award interest on the settlement amount.

In general, sovereign immunity precludes an award of interest against the United States. Library of Congress v. Shaw, 478 U.S. 310, 106 S. Ct. 2957 (1986). There are two exceptions to this rule: (1) if Congress has waived this immunity by specific statutory provision; and (2) where the Government has "cast off the cloak of sovereignty and assumed the status of a private commercial enterprise." Id., 478 U.S. at 317 n.5; Loeffler v. Frank, 486 U.S. 549, 556, 108 S. Ct. 1965, 1970 (1988).

With regard to the first exception, there is no statute expressly allowing interest on settlement amounts in cases under the FTCA. "Purported waivers of sovereign immunity are strictly construed, especially when dealing with interest awards." Sandia Oil Co. v. Beckton, 889 F.2d 258, 261 (10th Cir. 1989).

> There can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

Library of Congress v. Shaw, 478 U.S. at 317 (internal punctuation omitted).

The Tort Claims Act provides that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual

under like circumstances, but shall not be liable for interest prior to judgment." 28 U.S.C. §2674. The FTCA makes no other mention of interest awards. Wilson v. United States, 756 F. Supp. 213, 215 (D.N.J. 1991). The general provision allowing appropriations for payment of judgments and settlements against the government, 31 U.S.C. §1304(a)(3)(A), is applicable to the FTCA. Starns v. United States, 923 F.2d 34, 38 (4th Cir. 1991). Section 1304(b)(1) allows for interest on such judgments but does not provide for interest on settlements, and the Tenth Circuit has held that §1304 "requires a judgment before the interest can begin to accrue." Hull v. United States, 971 F.2d 1499, 1508 (10th Cir. 1992). Unfortunate as it is for Plaintiff, "[w]hile the United States has waived its immunity for interest in section 1304(b), we will not construe that waiver beyond what the language of the statute requires . . . Nothing in section 1304(b) requires the Government to satisfy its judgment promptly." Andrulonis v. United States, 26 F.3d 1224, 1231 (2d Cir. 1994).

Nor can Plaintiff rely on the second exception to the no-interest rule, which applies when a government agency is given the capacity by Congress to sue and be sued, and to engage in commercial transactions with the public. Loeffler, 108 S. Ct. at 1969. Where the agency in question provides a governmental function, particularly where it operates at a loss to the Treasury, it does not "operate as a private commercial enterprise." Resolution Trust Corp. v. Federal Sav. & Loan Ins. Corp., 25 F.3d 1493, 1506 (10th Cir. 1994). The Veterans' Administration is not the sort of governmental agency meant to be operated as a commercial venture:

> Unlike the Postal Service [the agency at issue in Loeffler] to which Congress has given the status of a private commercial enterprise, thereby effectuating a waiver of immunity from interest awards, when establishing the Veterans' Administration, Congress did not enable it to sue and be sued . . . Furthermore, the function of the Veterans' Administration is governmental in nature . . . [It] does not seek commercial profit or operate in any way as a commercial enterprise.

9

> Therefore, when creating the Veterans' Administration, Congress did not waive its immunity from interest awards.

Wilson, 756 F. Supp. at 216-17. It is true that, in waiving sovereign immunity for tort actions, Congress provided in the FTCA that the United States "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. §2674. However, this factor does override the rule of strict construction applicable to waivers of sovereign immunity where interest is sought against the government. Sandia Oil Co., at 261-62.

### **Conclusion**

Although Plaintiff's attorney may have been misled in the matter, there is no legal basis for calculating his attorney fee on the gross settlement amount of $400,000.00 rather than the net amount of $247,968.00, and the government is not estopped from using the lower figure by any action or representation of government officials. In addition, federal law does not allow an award of interest on the settlement amount.

However, because of the Court's conclusion that there was a mistaken belief that the attorney fees could be calculated on the total settlement rather than the amount actually paid to the Plaintiff, it is appropriate to allow the Plaintiff, should she so desire, to withdraw from the settlement and attempt to increase her award in trial. The Court will only authorize Plaintiff, not Defendant, to withdraw from the settlement. This because the mistake involved the method for calculating attorney fees, and it is the Plaintiff, not the Defendant, whose interests are affected by this issue. Plaintiff will have 10 days to advise Defendant whether she wishes to proceed with the settlement, as modified, or withdraw.

**Order**

IT IS THEREFORE ORDERED that Plaintiff's Motion to Enforce Settlement and Motion for Interest [Doc. 29] is denied;

IT IS FURTHER ORDERED that Plaintiff has until December 3, 1999 to advise Defendant whether she wishes to withdraw from the Settlement Agreement.

_____
Lorenzo F. Garcia
United States Magistrate Judge